J. Caleb Dalton*, D.C. Bar No. 1033291
M. Casey Mattox*, D.C. Bar No. 1033672
David A. Cortman*, D.C. Bar No. 478748
ALLIANCE DEFENDING FREEDOM
440 1st St NW, Suite 600
Washington, DC 20001
Phone: (202) 393-8690
Fax: (202) 347-3622
CDalton@ADFlegal.org
CMattox@ADFlegal.org
DCortman@ADFlegal.org

Michael L. Renberg CA Bar No. 136217
PARICHAN, RENBERG & CROSSMAN
1300 E. Shaw Ave., #126
Fresno, CA  93710
Phone: (559) 431-6300
Fax: (559) 432-1018
MRenberg@prcelaw.com
(designated local co-counsel)

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| **Young Americans for Liberty at University of California, Berkeley** an unincorporated association on behalf of itself and its members,<br><br>            Plaintiff,<br><br>v.<br><br>**Janet Napolitano**, in her official capacity as President of the University of California and in her individual capacity;<br>**Carol Christ**, in her official capacity as Chancellor of the University of California, Berkeley, and in her individual capacity;<br>**Stephen Sutton**, in his official capacity as Interim Vice Chancellor of Student Affairs of the University of California, Berkeley, and in his individual capacity;<br>**John or Jane Doe**, in his or her official capacity as LEAD Center Director at University of California, Berkeley; | CASE NO.<br><br><br>**VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES**<br><br>**DEMAND FOR JURY TRIAL** |

* Appearing *pro hac vice.*
VERIFIED COMPLAINT - 1

1  **Daisy Doe**, in his or her official capacity as
2  Peer Leadership Consultant LEAD Center
   University of California, Berkeley, and in his
3  or her individual capacity,

4          Defendants.

5          Plaintiff, Young Americans for Liberty at University of California, Berkeley, an

6  unincorporated association, on behalf of itself and its members, by and through counsel, and

7  for its Complaint against Defendants aver the following:

8                                        **I.**

9                               **INTRODUCTION**

10         1.      Public universities are supposed to be a "marketplace of ideas," where the young

11 adults that are tomorrow's leaders are exposed to differing opinions and learn how the

12 Constitution protects both their own rights and those of their classmates with whom they

13 disagree. University of California, Berkeley is teaching its students that the First Amendment

14 does not apply to some government actors, granting them unbridled discretion to discriminate

15 against student speech because of its viewpoint, selectively excluding student organizations

16 whose views it deems to be too "similar" to other existing organizations, and depriving its

17 students of the opportunity to be exposed to a robust exchange of differing ideas.

18         2.      Young Americans for Liberty is a group of students at Berkeley who share a

19 mutual love for freedom and the natural rights of life, liberty, and property. Young Americans

20 for Liberty is not political, or partisan, and its members span the spectrum of political identities.

21 They are bound together, however, by their desire to share the principles of liberty with others.

22 However, unlike other groups of students at Berkeley, the students of Young Americans for

23 Liberty cannot reserve space, invite speakers, or access the pool of funds that they paid into that

24 is reserved for student organizations and speakers and events they sponsor because Berkeley has

25 excluded Young Americans for Liberty from Registered Student Organization (RSO) status and

26 all the benefits that accompany this status. Young Americans for Liberty's voice is thus excluded

27 from the marketplace of ideas.

28

VERIFIED COMPLAINT - 2

3.      Berkeley maintains a policy that excludes student organizations from RSO status if the University deems the organization to be "too similar" to a previously registered organization. This discretion to discriminate is anathema to the First Amendment, and the marginalization of Young Americans for Liberty's minority viewpoint not only offends the Constitution, it undermines the core of the University's role in promoting the free exchange of ideas in the search for truth.

4.      This is a civil action seeking injunctive and declaratory relief, to vindicate and safeguard Plaintiff's and its members' fundamental rights as secured by the First and Fourteenth Amendments to the United States Constitution.

## II.

## JURISDICTION AND VENUE

5.      This action arises under the First and Fourteenth Amendments of the United States Constitution, and the Civil Rights Act of 1871, 42 U.S.C. §§ 1983 and 1988.

6.      This Court has original jurisdiction over these federal claims by operation of 28 U.S.C. §§ 1331 and 1343.

7.      This Court has authority to issue the requested declaratory relief under 28 U.S.C. § 2201-02.

8.      This Court has authority to issue the requested injunctive relief under 28 U.S.C. § 1343(a)(3).

9.      This Court has authority to issue the requested damages under 28 U.S.C. § 1343(a)(4).

10.     This Court is authorized to award attorneys' fees under 42 U.S.C. § 1988.

11.     Venue is proper under 28 U.S.C. § 1391 in the Northern District of California because the events giving rise to the claims occurred in this District.

**III.**

**INTRADISTRICT ASSIGNMENT**

12.     Pursuant to Civil L.R. 3-2(c)-(d) & 3-5, this case is a civil rights case, in a non-excepted category, suitable for assignment to the San Francisco or Oakland divisions because the civil action arose in Alameda County.

**IV.**

**IDENTIFICATION OF PLAINTIFF**

13.     Plaintiff Young Americans for Liberty at Berkeley (YAL) is a student-led, non-partisan, unincorporated expressive student organization comprised of University of California Berkeley students. It brings this action on behalf of itself and its individual student members.

14.     Plaintiff YAL's mission is to identify, educate, train, and mobilize students to promote the principles of the natural rights of life, liberty, and property.

15.     Plaintiff YAL seeks to raise awareness about principles of liberty on campus and how some government actions are threatening those liberties.

16.     Plaintiff YAL's members identify as classical liberal, conservative, and neither, but are united in their belief in, and advocacy for, principles of liberty.

17.     Plaintiff YAL seeks to become a registered student organization ("RSO") at Berkeley.

18.     Plaintiff YAL seeks to avail itself of the meeting space, speech forums, and other benefits and privileges that are available to RSOs at Berkeley.

19.     Plaintiff YAL has been denied RSO status at Berkeley by Defendants, and under policies created and enforced by Defendants.

20.     Plaintiff YAL and its members are entitled to content and/or viewpoint neutral access to all forums available to RSO's, including access to student organization funding.

21.     Plaintiff YAL's members are entitled to content and/or viewpoint neutral distribution of funds they pay that are distributed to RSOs.

22.     Part of Plaintiff YAL's mission and purpose is to be an expressive student organization at the College and to protect its members' constitutional rights, including their

VERIFIED COMPLAINT - 4

1  rights to free speech and association, against compelled speech, and to viewpoint-neutral access

2  to student organization funding.

3      23.    If Plaintiff YAL succeeds in this lawsuit, it will be able to obtain viewpoint

4  neutral access to RSO status and to all benefits and privileges available to such groups, including

5  meeting space, access to channels of communication and viewpoint neutral access to student fee

6  funding.

7      24.    Part of Plaintiff YAL's mission and purpose is opposed to political philosophies

8  such as socialism, communism, and government control over many areas of individual liberties

9  and commercial activities.

10     25.    Plaintiff YAL members' student fees that are allocated to other RSOs, are used to

11  fund RSOs that advocate against YAL's purpose and its members' beliefs.

12     26.    In addition to being denied access to the physical forums only open to RSOs,

13  Plaintiff YAL and YAL members are denied access to RSO funds that are allocated from the fees

14  YAL members pay because Defendants have denied them RSO status.

15     27.    Thus, YAL members are compelled to support, through the RSO Funding Policy,

16  ideas and philosophies that they oppose, and are denied access to the funds they pay to support

17  RSOs.

18                                     **V.**

19                    **IDENTIFICATION OF DEFENDANTS**

20     28. Defendant Janet Napolitano is, and was at all times relevant to this complaint, the

21  president of the University of California.

22     29. By delegated authority from the University of California Board of Regents, the laws

23  of California, and the University of California Bylaws, Defendant Napolitano is responsible for

24  the operation of the Universities of California, including Berkeley, including for the enactment,

25  enforcement, administration and policymaking relating to students and student organizations,

26  including the RSO Recognition Policy and the RSO Funding Policy and practices implementing

27  those policies.

28

VERIFIED COMPLAINT - 5

30. Defendant Napolitano has responsibility and authority over the Berkeley budget and allocation of monies within Berkeley, including the assessment of mandatory student fees and the allocation of Berkeley Campus Fee revenues to student organizations.

31. Defendant Napolitano possesses the authority to change and is responsible for enforcement of the RSO Recognition Policy and the RSO Funding Policy.

32. Defendant Napolitano enforces the RSO Recognition Policy in an unconstitutional manner because she permits University officials to exercise unbridled discretion in implementing the RSO Recognition Policy, has permitted YAL to be denied recognition under this policy, and is allowing denials of RSO status that are arbitrary and without justification and that result in and from content and/or viewpoint discrimination.

33. Defendant Napolitano enforces the RSO Funding Policy that requires members of YAL to pay mandatory student fees and allows Defendants to exercise unbridled discretion in allocating student activity fees through denial of RSO status, permitting discrimination against student groups on the basis of the content and/or viewpoint of their speech.

34. Defendant Napolitano is sued in her official capacity as President of the University of California, and in her individual capacity.

35. Defendant Carol Christ is, and was at all times relevant to this complaint, the Chancellor of the University of California, Berkeley.

36. Defendant Christ is responsible for the operation of the University of California, Berkeley, including for the enactment, enforcement, administration and policymaking relating to students and student organizations, including the RSO Recognition Policy and the RSO Funding Policy and practices implementing those policies.

37. Defendant Christ has responsibility and authority over the Berkeley budget and allocation of monies within Berkeley, including the assessment of mandatory student fees and the allocation of Berkeley Campus Fee revenues to student organizations.

38. Defendant Christ possesses the authority to change and is responsible for enforcement of the RSO Recognition Policy and the RSO Funding Policy.

39. Defendant Christ enforces the RSO Recognition Policy in an unconstitutional manner because she permits University officials to exercise unbridled discretion in implementing the RSO Recognition Policy, has denied YAL recognition under this policy, and is allowing denials of RSO status that are arbitrary and without justification and that result in and from content and/or viewpoint discrimination.

40. Defendant Christ enforces the RSO Funding Policy that requires members of YAL to pay mandatory student fees and allows Defendants to exercise unbridled discretion in allocating student activity fees through denial of RSO status, permitting discrimination against student groups on the basis of the content and/or viewpoint and content of their speech.

41. Defendant Christ is sued in her official capacity as Chancellor of the University of California, Berkeley, and in her individual capacity.

42. Defendant Stephen Sutton, is and was at all times relevant to this complaint the Interim Vice Chancellor of Student Affairs of the University of California, Berkeley.

43. Defendant Sutton is responsible for the enactment, enforcement, administration and policymaking relating to students and student organizations, including the RSO Recognition Policy and the RSO Funding Policy and practices implementing those policies.

44. Defendant Sutton enforces the RSO Recognition Policy in an unconstitutional manner because he permits University officials under his control or supervision to exercise unbridled discretion in implementing the RSO Recognition Policy, has denied YAL recognition under this policy, and is allowing denials of RSO status that are arbitrary and without justification and that result in and from content and/or viewpoint discrimination.

45. Defendant Sutton is sued in his official capacity as Vice Chancellor of Student Affairs of the University of California, Berkeley, and in his individual capacity.

46. John or Jane Doe, is sued in his or her official capacity as LEAD Center Director, at Berkeley.

47. As LEAD Center Director, Defendant Doe is responsible for the enactment, enforcement, administration and policymaking relating to student organizations, including the RSO Recognition Policy.

VERIFIED COMPLAINT - 7

48. Defendant Doe has supervisory authority over LEAD Center Staff who denied YAL RSO recognition status.

49. "Daisy" Doe is sued in his or her official capacity as Peer Leadership Consultant with the Berkeley LEAD Center, and in his or her individual capacity.

50. Defendant Daisy Doe was identified in communications with Plaintiff only as "Daisy, Peer Leadership Consultant (PLC)."

51. Defendant Daisy Doe is responsible for reviewing and communicating approval or denial of student organization's applications for RSO status.

52. Defendant Daisy Doe informed YAL that Defendants denied YAL's application for RSO status.

53. All of the acts of Defendants, their officers, agents, employees, and servants, were executed and are continuing to be executed by the Defendants under the color and pretense of the policies, statutes, ordinances, regulations, customs, and usages of the State of California.

## VI.

### STATEMENT OF FACTS

**Defendants' Registered Student Organization Recognition Policy**

54.    Berkeley operates a forum for registered student organizations because it recognizes that organized student groups are a valuable part of the student educational environment, and because, while they do not speak for the University and the University is not responsible for the speech of student groups, they further the University's educational mission by fostering an environment of the open exchange of ideas on campus.

55.    Over one thousand student organizations are currently granted RSO status and participate in this forum at Berkeley, including fraternities and sororities, sports teams, and student groups representing a number of political, religious, and other causes and views.

56.    Defendants maintain a website, lead.berkeley.edu, where they publish RSO policies including policies on how to obtain recognition as an RSO.

57.    Defendants' policies also include their unwritten practices and procedures.

58.     Defendants' policies and practices, written and unwritten regarding recognition of RSOs are referred to herein as "RSO Recognition Policies," or "RSO Policy."

59.     Defendants' RSO Recognition Policies do not include a list of objective, content and/or viewpoint neutral criteria by which to determine whether to approve or deny an application for RSO status.

60.     Defendants' RSO Policy requires that in order to become an RSO, a group of students must first submit a "New RSO Interest Form."

61.     This form requires a "Statement of Uniqueness."

62.     Defendants and/or state actors under Defendants' authority and control, determine whether a proposed RSO is "too similar" to an already recognized RSO.

63.     On information and belief, Defendants do not maintain a list of objective, content and/or viewpoint neutral criteria by which to determine when an organization is "too similar" to an already registered RSO.

64.     If Defendants, and/or state actors under Defendants' authority and control, determine that an applicant is "too similar" to another RSO the RSO policy requires that they deny the application.

65.     Many of the approved RSOs have overlapping missions and goals; some appear almost identical such as the "Cal Berkeley Democrats" and "Students for Hillary at Berkeley," or "Progressive Student Association" and "Socialist Alternative at Berkeley", or "Queer Alliance & Resource Center," the "Queer Student Union," and the "UNITY Resource Center."

66.     On information and belief, Defendants' RSO Policy does not provide that any recording be made or provided of the deliberations on whether to grant or deny RSO status.

**Defendants' Registered Student Organization Funding Policy**

67.     Defendants create a forum for students' expression by collecting student fees designated for re-distribution to RSOs.

68.     Every student member of Plaintiff YAL pays mandatory student fees at Berkeley.

69.     Approximately $27.50 per semester of the approximately $694 per-semester "Berkeley Campus Fee" paid by undergraduate students at Berkeley is allocated for distribution and funding to RSOs (hereinafter "RSO Funding Policy").

70.     These fees are pooled into a fund for distribution to RSOs.

71.     Every member of Plaintiff YAL pays into this pool of funds.

72.     RSOs use these funds to engage in expressive activities and further their missions.

73.     Only RSOs are eligible to receive distributions from the pool of funds designated for RSOs.

74.     If an association of students is denied RSO status, they are denied access to distribution of the student fees that are designated for RSO expression.

75.     Defendants do not maintain an exhaustive list of objective, content and/or viewpoint neutral criteria by which to determine when an organization is eligible to become an RSO.

76.     Thus, because RSO status serves as a gateway barrier to access to the forum created by the RSO fund, the Defendants have unbridled discretion to exclude groups from receiving RSO funding by denying them RSO status.

**Defendants' Denial of Recognized Status to YAL**

77.     On September 26, 2017, the President of YAL submitted to the Berkeley LEAD Center a properly completed statement of interest to start the process of becoming a registered student organization at Berkeley. This statement of interest is attached as Exhibit 1.

78.     On September 27, 2017, a representative from the Berkeley LEAD Center, identified only as "Daisy, Peer Leadership Consultant (PLC)," Defendant "Daisy Doe," responded via email denying YAL's application for RSO status. This email is attached as Exhibit 2.

79.     Defendants stated that YAL "does not meet the qualifications for creating a new organization" because it is "too similar to Cal Libertarians."

80.     Defendants ordered YAL to "work with" CAL Libertarians, and that if that failed they could set up "an appointment for [YAL's] statement of uniqueness" with a LEAD Center

Advisor at which they would be required to show what efforts they made to work with CAL Libertarians, but were not guaranteed recognized status despite meeting all other listed qualifications.

81.    The deadline for applications for RSO status was on September 27, 2017.

82.    Defendants' denial of YAL's application resulted in YAL not being recognized as an RSO for the Fall 2017 semester.

83.    YAL seeks to hold organization meetings on campus.

84.    YAL seeks to organize speaking events to educate its members and other campus community members in order to further its mission, and to recruit more members.

85.    YAL seeks to utilize funds for the purpose of printing promotional and educational materials, among other things.

86.    YAL plans to bring a speaker to campus in the Spring of 2018 semester to speak to its chapter and other campus community members in order to further its mission and goals.

87.    Because Defendants denied YAL's application, YAL is unable to reserve meeting space to hold organization meetings on the same basis as RSOs.

88.    Because Defendants denied YAL's application, YAL is unable to apply to access the Berkeley Campus Fees (to which their members have contributed) that are set aside for RSOs and their events.

89.    Because Defendants denied YAL's application, YAL is unable to reserve facilities for events to further its mission, including the Spring 2018 event, on the same basis as RSOs.

90.    Because Defendants denied YAL's application, YAL members are unable to freely associate together on the same basis as other students whose organizations have been granted RSO status and advocate for their ideas on campus.

91.    Because Defendants denied YAL's application, YAL is limited in its ability to speak on campus and further its mission and goals and to recruit members.

92.    Defendants' denial of YAL's application burdens YAL's speech.

93.    Defendants' denial of YAL's application burdens YAL expressive association.

94.     Defendants' denial of YAL's application burdens YAL's association.

95.     As a result of its denial of RSO status, YAL will be forced to replace any student fee funding it would have received through other sources, including its members' own personal resources. However, YAL members will continue to be required to pay student fees that may be accessed by and used to promote the ideas of those whose RSO status has been granted – including groups advocating for views contrary to those of YAL and its members.

96.     YAL has suffered actual damages by being denied access to RSO funding and thus expending funds in excess of $50 that would have been covered by RSO funds.

97.     YAL's members have suffered actual damages by being forced to pay into a system of unconstitutionally administered student fees.

98.     YAL members have also expended personal funds out of pocket on behalf of YAL to further YAL's mission and assist in membership recruitment. These expenses would have been covered by RSO funds.

99.     Due to out of pocket expenses paid by YAL members on behalf of YAL, and due to the payment of unconstitutionally administered fees by each member of YAL, Defendants' actions have caused actual damages to Plaintiff and Plaintiffs' members in excess of $100, and Defendants' actions continue to cause actual damage to Plaintiff and Plaintiff's members.

100.    Were it afforded RSO status, YAL would avail itself of the benefits, privileges, and channels of communication available to RSOs, including applying for funding from the fees reserved for RSOs.

## VII.

## STATEMENTS OF LAW

101.    Each and all of the acts alleged herein were done by Defendants and/or their agents or persons under their control under the color and pretense of state law, statutes, ordinances, regulations, customs, usages, and policies of the State of California.

102.    Defendants and/or their agents or persons under their control denied YAL RSO status under color of state law.

103.    Defendants knew or should have known that by subjecting YAL to a system of unbridled discretion in order to be recognized as a student organization that they violated the Plaintiff's constitutional rights.

104.    Defendants knew or should have known that by denying YAL RSO status without justification that it violated its constitutional rights.

105.    Defendants knew or should have known that by excluding student organizations from receiving Berkeley Campus Fee funding through a system of unbridled discretion that they violated Plaintiff's, and its' members', constitutional rights.

106.    Defendants knew or should have known that by requiring the members of YAL to pay student activity fees for the support of groups whose views they do not wish to support while funding groups with those funds through a content and/or viewpoint discriminatory system that affords unbridled discretion to allocate student activity fees, Defendants violated Plaintiff's and its members' constitutional rights.

**VIII.**

**FIRST CAUSE OF ACTION –**
**VIOLATION OF YOUNG AMERICANS FOR LIBERTY AND ITS MEMBERS' FIRST AMENDMENT RIGHT OF ASSOCIATION**

107.    The allegations contained in paragraphs 1 to 106 are incorporated herein by reference.

108.    The First Amendment of the United States Constitution, incorporated and made applicable to Defendants through the Fourteenth Amendment, guarantees Plaintiff the right of association.

109.    A University's denial of registration of a student organization without sufficient lawful justification burdens and abridges the right of association.

110.    A University's denial of a student group's access to meeting space and other benefits and privileges of registration, including the channels of communication available to other student groups on its campus, burdens and abridges the right of association.

111.    Once a student group files a completed application for registered status with a University, the burden is upon the University to justify rejection of the application.

112.    The denial of registered student organization status to a student organization is a form of prior restraint, placing a heavy burden on the University to justify its denial of registration.

113.    The content and/or viewpoint of a student group's expression or purpose for association is an invalid basis for denying a student group registration.

114.    Defendants denied YAL's timely and complete application (the "New Organization Interest Form") for RSO status.

115.    Defendants' stated justification for the denial was based on YAL's viewpoints and Defendants' perception of the similarity in viewpoints between YAL and College Libertarians.

116.    Defendants' denial of YAL's application for RSO status was viewpoint discrimination.

117.    Because of Defendants' denial of YAL's application for RSO status, the group is ineligible to reserve meeting space for the organization and for its events and is excluded from channels of communication available to other student groups on campus.

118.    Because of Defendants' denial of YAL's application for RSO status, the group is hindered in its ability to communicate with other students on campus and to remain a viable entity in the Berkeley community.

119.    Defendants have no legitimate or compelling reason for denying RSO status to YAL.

120.    The RSO Policy affords Defendants unbridled discretion to grant or deny RSO status.

121.    The RSO Policy makes key benefits and privileges, including the ability to reserve meeting space, invite certain speakers, and use channels of communication available only to RSOs, denying those benefits and privileges to groups that are denied RSO status.

122.    Associating with other organizations, even ones that may hold similar but not identical beliefs, alters the message YAL's members wish to express and its purpose for association.

VERIFIED COMPLAINT - 14

123. Accordingly, Defendants' RSO Policy, facially and as applied to YAL, violates the First Amendment right of association.

124. Because of Defendants' actions, Plaintiff YAL and its members have suffered, and continue to suffer, economic injury and irreparable harm, and are entitled to an award of monetary damages and equitable relief.

125. Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiff is entitled to a declaration that Defendants violated their First Amendment right to freedom of association and an injunction against Defendants' policy and actions. Additionally, Plaintiff is entitled to damages in an amount to be determined by the evidence and this Court and the reasonable costs of this lawsuit, including reasonable attorneys' fees.

## IX.

### SECOND CAUSE OF ACTION – VIOLATION OF YOUNG AMERICANS FOR LIBERTY AND ITS MEMBERS' FIRST AMENDMENT RIGHT TO FREEDOM OF SPEECH: UNBRIDLED DISCRETION, VIEWPOINT DISCRIMINATION, AND COMPELLED SPEECH

126. The allegations contained in paragraphs 1 to 125 are incorporated herein by reference.

### RSO Policy

127. The First Amendment's Free Speech Clause, incorporated and made applicable to the states by the Fourteenth Amendment to the United States Constitution, prohibits content and/or viewpoint discrimination by a public university in its decision to provide registered student organization status to a student group and to provide access to the benefits, privileges, and forums available to registered student organizations.

128. The First Amendment's Free Speech Clause, incorporated and made applicable to the states by the Fourteenth Amendment to the United States Constitution, prohibits content and/or viewpoint discrimination in a public forum created for student speech.

129.    When a public university registers student organizations and makes benefits, privileges, and access to speech forums available to those registered student organizations, it creates a public forum for student speech and expression.

130.    The government's ability to restrict speech in a public forum is limited.

131.    A public university may not apply content and/or viewpoint-based standards in registering student organizations.

132.    The RSO Policy creates a public forum for student speech.

133.    The RSO Policy affords Defendants and other University officials unbridled discretion to grant or deny registration to a student group, permitting discrimination against a student group because of the content and/or viewpoint of its speech.

134.    The lack of objective criteria, factors, or standards for determining whether a group may be an RSO and participate in that forum for student speech gives government officials unbridled discretion to exclude or prohibit speech based on its content and/or viewpoint in violation of the First Amendment.

135.    Defendants' RSO Policy confers unbridled discretion on Defendants or other officials charged with determining whether a student group will be granted RSO status to suppress and/or discriminate against disfavored speech because of its content and/or viewpoints.

136.    Defendants' RSO Policy does not provide that any recording be made or provided of the deliberations on whether to grant or deny RSO status thus conferring unbridled discretion on officials to discriminate based on content and/or viewpoint.

137.    Denying YAL's application because it is "too similar" to another organization, requires Defendants to discriminate based on content and/or viewpoint in its determination.

138.    Defendants' denial of YAL's application for registered student organization status was viewpoint discriminatory.

139.    Defendants' denial of registered student organization status to YAL and its exclusion from receiving student activity funding served no sufficient and lawful purpose.

140.    Accordingly, Defendants' RSO Policy, and their enforcement of this policy against Plaintiff violated Plaintiff's rights to freedom of speech guaranteed by the First Amendment.

141.    Defendants' denial of YAL's application for RSO status fails to satisfy strict scrutiny because it is not narrowly tailored to promote a compelling government interest.

142.    Defendants' RSO Policy is not content and viewpoint neutral and does not leave open ample alternative channels of communication.

143.    Defendants' denial of YAL's application for registered student organization status was unreasonable.

**Student Fee Allocation Policy**

144.    The First Amendment's Free Speech Clause, incorporated and made applicable to the states by the Fourteenth Amendment to the United States Constitution, prohibits a public university from permitting viewpoint discriminatory allocation of student fee funding to RSOs.

145.    When a public university collects mandatory student fees and allows registered student organizations to apply for funding from those student fees, it creates a public forum for student speech and expression.

146.    Mandating students pay fees for the purpose of distribution to RSOs that speak messages the students disagree with is unconstitutional compelled speech unless the funds are distributed in a content and/or viewpoint neutral manner limited by objective viewpoint neutral criteria.

147.    A student organization's use of funding obtained through mandatory student fees to promote its own views is a form of protected speech.

148.    A public university may not apply content and/or viewpoint-based standards in allocating student organization funding derived from mandatory student fees.

149.    The Student Fee Policy creates a public forum for student speech.

150.    Because the RSO Recognition Policy affords Defendants and other University officials unbridled discretion to grant or deny registration to a student group, permitting discrimination against a student group because of the content and viewpoint of its speech, and

because the Student Fee Policy limits eligibility only to RSOs, the Student Fee policy affords unbridled discretion to exclude student groups from receipt of funding based on the content and/or viewpoint of their speech.

151. Defendants' exclusion of YAL from the opportunity to apply for student fee funding is content and/or viewpoint discriminatory.

152. Defendants' Student Fee Policy and the exclusion of YAL from the opportunity to apply for Student Fee funding fail to satisfy strict scrutiny because it is not narrowly tailored to promote a compelling government interest.

153. Defendants' Student Fee Policy and the exclusion of YAL from the opportunity to apply for Student Activity Fee funding is content and/or viewpoint discriminatory and unreasonable.

154. The lack of objective criteria, factors, or standards for determining whether a group may receive Student Fee funding and at what level gives government officials unbridled discretion to exclude, prohibit, or disadvantage speech based on its content and/or viewpoint in violation of the First Amendment.

155. Because Defendants' discriminate based on content and/or viewpoint in recognizing RSOs, and the RSO Policy serves as a gateway to access the mandatory student fees paid by YAL members for distribution to RSOs, Defendants compel Plaintiff's members to speak a message by financially supporting RSOs whose message they disagree with, since those funds are not distributed in a content and/or viewpoint neutral manner.

156. Because of Defendants' actions, Plaintiff and its members have suffered, and continue to suffer, economic injury and irreparable harm. Plaintiff is entitled to an award of monetary damages and equitable relief.

157. Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiff is entitled to a declaration that Defendants violated its First Amendment right to freedom of speech and an injunction against Defendants' policy and actions. Additionally, Plaintiff is entitled to damages in an amount to be determined by the evidence and this Court and the reasonable costs of this lawsuit, including its reasonable attorneys' fees.

# X.

## THIRD CAUSE OF ACTION –
## VIOLATION OF YOUNG AMERICANS FOR LIBERTY AND ITS MEMBERS' FOURTEENTH AMENDMENT RIGHT TO EQUAL PROTECTION

158.    The allegations contained in paragraphs 1 to 156 are incorporated herein by reference.

159.    The Fourteenth Amendment to the United States Constitution guarantees Plaintiffs the equal protection of the laws, which prohibits Defendants from treating Plaintiff differently than similarly situated speakers or associations.

160.    The government may not treat a person or association of persons disparately as compared to similarly situated persons or associations when such disparate treatment burdens a fundamental right, targets a suspect class, or has no rational basis.

161.    Plaintiff, and its members are similarly situated to other RSOs at the University.

162.    Plaintiff, and its members are similarly situated to other associations of students who are similar but not identical to already recognized RSOs yet have been granted RSO status.

163.    Defendants treat Plaintiff and its members differently than other similarly situated speakers on campus by denying Plaintiff and its members access to speech forums that similarly situated associations and students may access.

164.    Defendants' policies and actions disadvantage Plaintiff and its members by limiting their ability to associate on an equal basis as other similarly situated associations and students.

165.    Defendants' policies and actions disadvantage Plaintiff and its members by limiting their ability to speak on an equal basis as other similarly situated associations and students.

166.    Defendants' policies and actions disadvantage Plaintiff and its members by limiting their ability to access speech forums on an equal basis as other similarly situated associations and students.

167.    Defendants' policies and actions have caused Plaintiff and its members actual damages.

VERIFIED COMPLAINT - 19

168.    Defendants' policies and actions violate Plaintiff's and its members' fundamental right to association and free speech.

169.    When government regulations, like Defendants' policies and actions, infringe on fundamental rights, discriminatory intent is presumed.

170.    Defendants' RSO Policies are underinclusive, prohibiting some speech and association while permitting similarly situated speech and association by others students and RSOs.

171.    Defendants lack a rational or compelling state interest for such disparate treatment of Plaintiff and its members.

172.    Because of Defendants' actions, Plaintiff and its members have suffered, and continue to suffer, economic injury and irreparable harm. Plaintiff is entitled to an award of monetary damages and equitable relief.

173.    Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiff is entitled to a declaration that Defendants violated its Fourteenth Amendment right to equal protection and an injunction against Defendants' policy and actions. Additionally, Plaintiff is entitled to damages in an amount to be determined by the evidence and this Court and the reasonable costs of this lawsuit, including its reasonable attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request the following relief:

A.  A declaratory judgment that the Defendants' RSO Policy, facially and as-applied, violates YAL's rights under the First and Fourteenth Amendment;

B.  A declaratory judgment that the Defendants' Student Fee Policy, facially and as-applied, violates Plaintiffs' rights under the First and Fourteenth Amendment;

C.  A preliminary and permanent injunction enjoining the enforcement of Defendant's prohibition on recognizing organizations that Defendants consider "too similar" to other RSOs;

D.  A preliminary and permanent injunction prohibiting the Defendants, their agents, officials, servants, employees, and any other persons acting in their behalf from denying

YAL status as a registered student organization or any of the benefits, privileges or access to speech forums pertaining to RSO status;

E.  A preliminary and permanent injunction prohibiting Defendants from collecting mandatory student fees for the purpose of funding RSOs without implementing a list of exhaustive viewpoint neutral criteria for funding distribution that adequately limits Defendants' discretion;

F.  Actual compensatory damages for infringing Plaintiff's and its members exercise of their First and Fourteenth Amendment rights;

G.  Nominal damages for the violation of Plaintiffs' First and Fourteenth Amendment rights;

H.  Plaintiffs' reasonable attorneys' fees, costs, and other costs and disbursements in this action pursuant to 42 U.S.C. § 1988;

I.  All other further relief to which Plaintiffs may be entitled,  and

J.  That this Court retain jurisdiction of this matter as necessary to enforce the Court's orders.

Pursuant to Civil L.R. 3-6(a) Plaintiff, by and through counsel, demands a jury trial.

Respectfully submitted on this, the 4th day of December, 2017,

Attorneys for Plaintiffs,

By: /s/ Michael L. Renberg

| | |
|---|---|
| J. Caleb Dalton*, D.C. Bar No. 1033291<br>M. Casey Mattox*, D.C. Bar No. 1033672<br>David A. Cortman*, D.C. Bar No. 478748<br>ALLIANCE DEFENDING FREEDOM<br>440 1st St NW, Suite 600<br>Washington, DC 20001<br>Phone: (202) 393-8690<br>Fax: (202) 347-3622<br>CDalton@ADFlegal.org<br>CMattox@ADFlegal.org<br>DCortman@ADFlegal.org | Michael L. Renberg CA Bar No. 136217<br>PARICHAN, RENBERG & CROSSMAN<br>1300 E. Shaw Ave., #126<br>Fresno, CA  93710<br>Phone: (559) 431-6300<br>Fax: (559) 432-1018<br>MRenberg@prcelaw.com<br>(designated local co-counsel) |

Attorneys for Plaintiffs
*Appearing *pro hac vice*

VERIFIED COMPLAINT - 21

1

2

## **VERIFICATION OF COMPLAINT**

3    I, Khader Kakish, a citizen of the United States and a resident of the State of California,

4 hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that I have read the

5 foregoing Verified Complaint and the factual allegations therein, and the facts as alleged are true

6 and correct.

7    Executed this _3rd_ day of December, 2017.

8

9

10 _____

11 Khader Kakish, authorized representative of Plaintiff, Young Americans for Liberty at

12 University of California, Berkeley

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

VERIFIED COMPLAINT - 22